THOMAS S. MERRITT AND BARBARA H. MERRITT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Merritt v. Commissioner
Docket No. 28142-90
United States Tax Court
T.C. Memo 1992-443; 1992 Tax Ct. Memo LEXIS 465; 64 T.C.M. (CCH) 397; August 5, 1992, Filed *465 Decision will be entered for petitioners. For Petitioners: Stephen M. Feldman and Marc L. Prey. For Respondent: Eric M. Nemeth and Stewart Todd Hittinger. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined that petitioners had a $ 22,814.77 income tax deficiency for 1987. In 1987 petitioners received lump-sum distributions, as a result of Thomas S. Merritt's 1986 retirement, from his profit-sharing plan, pension plan, and employee stock option plan. Petitioners timely rolled over the pension plan and stock option plan distributions. They elected 10-year averaging for the profit-sharing plan distribution on their 1987 return. The issue to be decided is whether petitioners qualify under section 1124(a) of the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, 100 Stat. 2085, 2475, for 10-year averaging for this distribution. We hold that they do. Younger v. Commissioner, T.C. Memo. 1992-387. In light of our decision on this issue, we need not decide petitioners' alternative claim that they qualify for 10-year averaging for their profit-sharing plan lump-sum distribution under TRA section 1122(h)(3), 100 Stat. 2470. Unless *466 otherwise specified, all section references are to the Internal Revenue Code in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioners
Petitioners are husband and wife who resided in Howe, Indiana, when they filed their petition in this case. All references to petitioner in the singular are to Thomas S. Merritt. Petitioner retired from General Telephone Co. of Indiana (GTE) on March 1, 1986. He was 51 years old when he retired. While an employee of GTE, petitioner participated in: (a) The GTE Savings, Investment and Tax Deferral Plan (profit-sharing plan); (b) the GTE Service Corporation General Pension Trust (pension plan); and (c) the GTE Consolidated Employee Stock Option Plan (ESOP). All three plans were qualified under sections 401 and 501. 2. Distributions from Petitioner's Employee Plans
Petitioner received distributions of his balances in these three plans as a result of his retirement. On February 28, 1987, petitioner received a $ 70,110.15 lump-sum distribution of his balance in the profit-sharing plan. On March *467 1, 1987, petitioner received a $ 232,124.34 lump-sum distribution of his balance in the pension plan. Petitioner timely rolled this amount over to a qualified individual retirement account (IRA). Also, on or about March 1, 1987, petitioner received a $ 9,571 lump-sum distribution of his balance in the ESOP (ESOP distribution). Petitioner timely rolled all but $ 132 of this amount over to a qualified IRA. GTE sent petitioners a notice with the distributions, which included the following: If an employee separates from service in 1986 and receives a lump sum distribution in 1987, but before March 16, 1987, on account of his separation from service, he may elect to treat the distribution as if he received it in 1986. In that event, the distribution would be taxed under tax rates in effect in 1986 and would not be subject to the 10% tax on early distribution, the 15% tax on large distributions, or the new rules regarding lump sum distributions. 3. Petitioners' Income Tax Returns
A certified public accounting firm prepared petitioners' 1987 income tax return. Petitioners gave the GTE notice to their accountants to help prepare their return. The accountants researched *468 how to treat petitioners' lump-sum distributions, and concluded that petitioners were entitled to elect 10-year averaging for the profit-sharing plan distribution on their 1987 income tax return. Petitioners timely filed their income tax return for 1987 on April 10, 1988. In it, petitioners elected to roll the $ 232,124 pension plan distribution and $ 9,439 of the $ 9,571 ESOP distribution into an IRA under section 408. Petitioners treated $ 132 of the ESOP distribution as ordinary income. Petitioners elected 10-year averaging for the $70,110.15 profit-sharing plan lump-sum distribution. Petitioners attached Form 4972, Tax on Lump-Sum Distributions for 1987, to their return. Petitioners correctly calculated the tax, using 1986 rates. Petitioners also attached the following statement to their 1987 return: STATEMENT 2 - PENSION AND ANNUITY INCOME GENERAL RULE INVESTMENT
EXPECTED
PCT OF
AMOUNT
DESCRIPTION
IN
RETURN
INCOME
RECEIVED
CONTRACT
EXCLUDED
THIS YR
(H) GTE-SVGS & TAX DEF. PLAN
8,838
(H) GTE-CONS. ESOP
2,098
ROLLOVER FROM A QUALIFIED
PLAN
AMOUNT
DESCRIPTION
OF
DISTRIBUTION
(H) GTE PENSION TRUST
232,124
(H) GTE-CONS.ESOP
9,571
TAXABLE INCOME FROM
QUALIFIED PLAN
DISTRIBUTIONS
SUMMARY FOR ALL PENSIONS
AND ANNUITIES
OTHER PENSIONS AND
ANNUITIES
TOTAL AMOUNT RECEIVED
252,631
TAXABLE AMOUNT
*469 TAX-FREE
TAXABLE
DESCRIPTION
PORTION
PORTION
(H) GTE-SVGS & TAX DEF. PLAN
8,838
0
(H) GTE-CONS. ESOP
2,098
0
ROLLOVER FROM A QUALIFIED
PLAN
AMOUNT
TAXABLE
DESCRIPTION
OF
PORTION
ROLLOVER
(H) GTE PENSION TRUST
232,124
0
(H) GTE-CONS.ESOP
9,439
132
TAXABLE INCOME FROM
132
QUALIFIED PLAN
DISTRIBUTIONS
SUMMARY FOR ALL PENSIONS
AND ANNUITIES
OTHER PENSIONS AND
ANNUITIES
TOTAL AMOUNT RECEIVED
TAXABLE AMOUNT
132
The statement did not indicate that the election was pursuant to TRA section 1124(a). OPINION Amounts distributed from a qualified pension or profit-sharing plan are generally taxable to the recipient in the year of distribution. Sec. 401(a). For distributions received before January 1, 1987, section 402(e)(1) provided 10-year averaging for lump-sum distributions. The Tax Reform Act of 1986 amended section 402(e)(1) to replace 10-year averaging with 5-year averaging for distributions after December 31, 1986, and to phase out capital gains treatment of certain distributions for pre-1974 benefits over a 5-year period. TRA sec. 1122(a)(2) and (b), 100 Stat. 2466-2467. Congress provided some *470 relief for these changes by enacting transition rules. One transition rule allows individuals who separated from employment in 1986 and who received lump-sum distributions between January 1 and March 16, 1987, on account of their separation to treat the 1987 distributions as if received in 1986. TRA sec. 1124(a), 100 Stat. 2475-2476. TRA section 1124(a) allows taxpayers to treat a lump-sum distribution made in 1987 "as if" made in 1986. TRA section 1124(a) provides: (a) IN GENERAL. -- If an employee separates from service during 1986 and receives a lump sum distribution (within the meaning of section 402(e)(4)(A) of such Code) after December 31, 1986, and before March 16, 1987, on account of such separation from service, then, for purposes of the Internal Revenue Code of 1986, such employee may elect to treat such lump sum distribution as if it were received when such employee separated from service. Thus, under TRA section 1124(a), a taxpayer may use 10-year averaging for a lump-sum distribution made in 1987 if four requirements are met: (1) The taxpayer separated from employment during 1986; (2) the taxpayer received a lump-sum distribution within the meaning of section 402(e)(4)(A); *471 (3) the taxpayer received such distribution between January 1 and March 15, 1987; and (4) the taxpayer elects to treat the distribution as if received when the employees separated from service. Respondent concedes that petitioners satisfy the first three requirements. However, respondent contends that petitioners did not properly elect to use the provision. Notice 87-13, 1987-1 C.B. 432, 443, provides that: (1) The election under TRA section 1124(a) must be made on a 1986 original or amended return; (2) a statement must be attached to the return indicating that the lump-sum distribution is to be treated as a TRA section 1124 lump-sum distribution, and (3) the deadline for such an election is the due date for the 1987 return with extensions. Respondent argues that petitioners failed to comply with the first and second of these provisions. That is, respondent contends that petitioners' TRA section 1124(a) election was improper because it was made on a 1987 return rather than a 1986 original or amended return, and because petitioner did not state that the election was made under TRA section 1124(a). Section 7805 gives the Secretary authority to issue regulations *472 including to specify the time and manner for making elections. National Western Life Insurance Co. v. Commissioner, 54 T.C. 33, 40 (1970). The Secretary has promulgated no regulations under TRA section 1124(a). Neither section TRA 1124(a) nor the related committee reports specify how to make the election. See H. Conf. Rept. 99-841 (1986), 1986-3 C.B. (Vol. 4) 1, 458-463; H. Rept. 99-426 (1985), 1986-3 C.B. (Vol. 2) 1; S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 1. Petitioners used the 10-year averaging section on Form 4972. Petitioners used 1986 tax rates for the profit-sharing plan distribution. Respondent concedes that petitioners' calculation of tax on the profit-sharing plan distribution was correct. Respondent's Form 4972 is labeled "1987" in the upper right-hand corner and contains provisions for 10-year and 5-year averaging. This form was intended, as its instructions state, to apply to the election of 10-year averaging for lump-sum distributions received by persons age 50 or over on January 1, 1986. Petitioners could reasonably believe from the form that it could properly be filed with the 1987 *473 return. Section 1011A(d)(1) of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, 3476, provides that the taxpayer may treat a lump-sum distribution under TRA section 1124(a) as if made in 1986 "for purposes of the Internal Revenue Code of 1986". The Ways and Means and Finance Committee reports for TAMRA state that under TRA section 1124(a), the employee "could treat the lump-sum distribution as received in 1986 for all purposes." These committee reports also state that, under TAMRA, an election to treat the distribution as if received in 1986 is "for all purposes under the Code." H. Rept. 100-795, at 173 (1988); S. Rept. 100-445, at 181 (1988). We do not rely on the legislative history accompanying TAMRA in 1988 to construe TRA section 1124(a), but even if we did look at it, it fails to shed significant light on the subject. Younger v. Commissioner, T.C. Memo. 1992-387. We also emphasize that the transitional rule at issue is a relief provision of limited applicability, which should be liberally construed; and that, permitting the election to be made on a timely filed 1987 return prejudices neither petitioner nor *474 respondent. Younger v. Commissioner, supra. If the election is not valid, the distribution is taxable in 1987. Sec. 451(a). We conclude that TRA section 1124(a) permits either an election on an original or amended 1986 return filed by the due date for the 1987 year, or an election for 1987 on a timely filed return for 1987. Younger v. Commissioner, supra.
Decision will be entered for petitioners.